UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 1:06CR 68 RWS |
| ) | |
| JOSEPH D. CROSSNO, ) | |
| ) | |
| Defendant(s). ) | |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

The defendant has filed a Motion to Suppress Evidence and Statements (Document #17). He asks that the court suppress as evidence items taken from the person of Defendant Joseph D. Crossno and the defendant's motor vehicle as a result of the stop of the motor vehicle by Deputy Sheriff Aaron Pratt on June 6, 2003. The defendant alleged in his motion that the motor vehicle was not committing any traffic violation which would justify its stop and detention. The defendant alleges further that the detention and arrest of the defendant was without probable cause. The defendant claims the search of his vehicle was without consent or a search warrant. The defendant states that any statements he made were not preceded by any Miranda warnings and would have been the result of an illegal stop and arrest and, consequently, "fruits of the poisonous tree."

**Factual Background**

On June 6, 2003, shortly before midnight, Dunklin County Deputy Sheriff Aaron Pratt was

patrolling an area in Hornersville, Missouri, on School Street. Pratt met a red or maroon (black as it turned out) pickup truck traveling in the opposite direction. When the truck passed Pratt, Pratt looked at it in his rear view mirror. Deputy Pratt testified he could not see the rear license plate. Pratt believed that the light illuminating the rear license plate was out, which is a violation of state law. Pratt made the decision to stop the pickup. There were no other traffic violations that Pratt observed.

He turned his patrol car around, got behind the truck and turned on his emergency lights. The pickup pulled over within a short distance. Pratt did not recognize the pickup truck as belonging to any person he knew. He walked up to the driver's door of the truck, keeping his attention focused on the driver and a passenger. Pratt then made contact with the driver, Christopher Bolt. The passenger was Joseph Crossno. Pratt did not know either man prior to this night, although he had heard of Crossno before.

Pratt told Bolt that he had stopped him for having a defective license plate lamp. Pratt saw several beer cans in the truck. He asked Bolt if he had been drinking. Bolt said that he had not. At that time, Crossno was cursing.

Pratt then asked if there were any guns, drugs, knives or illegal contraband in the vehicle. Bolt said there were not. Pratt asked who owned the vehicle. Bolt said that Crossno did. Bolt also said that he was driving Crossno around so he could get drunk.

Pratt then observed Crossno lunge forward and he came up with a pistol. Crossno did not point the pistol at Pratt but held it. Pratt ran back to the rear corner of the truck, drew his service revolver and told Crossno to drop the weapon. Crossno looked at him, then looked at the pistol. Pratt again told Crossno to drop the pistol. Crossno threw the pistol out of the passenger

window of the truck.

Pratt decided to arrest Crossno for possession of a concealed weapon. He went to the passenger door of the truck and ordered Crossno out. Crossno said he wasn't going to get out. Pratt holstered his weapon and opened the door. Pratt pulled Crossno out of the truck and tried to handcuff him. Crossno pulled away from Pratt, and Pratt forced Crossno to the ground and handcuffed him. Crossno was also arrested for resisting arrest.

Pratt looked in the grass next to the right side of the car. He found and seized a loaded .22 caliber pistol in the grass about eight feet from the truck. Deputy Pratt searched the truck and found two boxes of .22 caliber ammunition and a large sword. The ammunition was seized. Pratt could not remember whether the sword was seized or not.

Pratt then drove Crossno to the Dunklin County Sheriff's Office. Crossno had a strong odor of an intoxicating beverage coming from his person. On the way, Pratt asked Crossno how much alcohol he had to drink. Crossno said that he did not know, but all he did know was that he was drunk.

While he was being transported, Crossno said several things, including that he was sorry for resisting arrest, that he would have been scared if someone had pulled a gun on him during a traffic stop, that Pratt didn't have the right to arrest him, that he had permission to carry the gun because a couple of drug dealers wanted to kill him and that he would never quit carrying a gun as long as he was alive. Pratt did not ask any questions or make any statements to Crossno prior to these statements.

Pratt did not read Crossno any Miranda warnings prior to his making the statements related above. Pratt also did not check the license plate lamp to see if it was working. Pratt did

not give Bolt a ticket for that violation.

Officer Pratt testified that the reasons for Mr. Crossno's arrest were for possession of a concealed weapon and resisting arrest.

In May, 2006, Pratt happened to walk into the booking room at the Dunklin County Jail at the time when Crossno was being arrested on the federal warrant. Pratt was talking to another officer. Crossno saw Pratt and asked if Pratt knew why he was arrested. Pratt said he wasn't sure. Crossno said that it was because of that time three or four years ago when he threw that gun out of the truck. Pratt said it was two or three years ago. That was the end of the conversation.

## **Discussion**

The principal issue, although there are other issues, is the legality of the stop of the defendant's truck on the night of June 6, 2003.

The government points to United States v. Mallari, 334 F.3d 765 (8th Cir. 2003), to support its position that the stop by Deputy Pratt was proper. The full quotation from Mallari is as follows:

> We have repeatedly held that "any traffic violation, regardless of its perceived severity, provides an officer with probable cause to stop the driver." (emphasis is that of the Court of Appeals) United States v. Jones, 275 F.3d 673, 680 (8th Cir. 2001). "To determine whether a traffic stop was based on probable cause or was merely pretextual, an 'objective reasonableness' standard is applied." Id. An officer is justified in stopping a motorist when the officer "objectively has a reasonable basis for believing that the driver has breached a traffic law." United States v. Thomas, 93 F.3d 479, 485 (8th Cir. 1996); see Sanders, 196 F.3d at 913 (officer's mistaken belief, but objectively reasonable basis for believing, that a traffic violation occurred supported traffic stop). Moreover, subjective intent is not determinative in deciding whether the stop was reasonable. See Whren v. United States, 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

The only testimony that there was a rear license plate lamp working that night was offered by the defendant's father, Carl Crossno. None of the other witnesses called by the defendant testified that the lamp was working. Officer Pratt did not remember whether the tailgate was up or down. If it was down, it may be that the license plate was not visible even if there was a lamp. Officer Pratt testified that when he looked in his rear view mirror, he could see no license plate on the defendant's truck.

The court accepts the testimony of Officer Pratt as true. He did not try to dress up the traffic stop by indicating any other traffic violation had occurred. The driver of the pickup truck, Christopher Bolt, was not accused of resisting arrest or committing any crime other than driving the vehicle with a defective license plate light.

The court finds that Deputy Pratt's action in stopping the defendant's vehicle when he was not able to see a visible license plate on the truck was objectively reasonable in the circumstances. Section 307.075 RSMo. requires that a white light illuminate the rear registration marker [license plate] to render it clearly legible from a distance of 50 feet to the rear. Even if Deputy Pratt was mistaken, the reasonableness of his actions is determined by what the officer reasonably knew at the time. United States v. Smart, 393 F.3d 767, 770 (8th Cir. 2005). His testimony was that when he looked, he did not see a license plate.

The court held in the Smart case that the officer involved had an objectively reasonable basis to stop Mr. Smart's vehicle if the officer reasonably suspected that Mr. Smart was operating a vehicle that did not comply with Iowa traffic laws. In our case, Deputy Pratt reasonably suspected that Mr. Bolt was operating the defendant's truck without a visible rear license plate due to a defective light.

The court finds the stop of the vehicle was according to law and constitutional.

### The Arrest of Mr. Crossno

On June 6, 2003, Section 571.030.1.(1) forbade the possession of a concealed weapon. Three months later, on September 11, 2003, the Missouri Legislature overrode the Governor's veto of a new provision passed by the Legislature: "Subdivision (1) of subsection 1 of 571.030 does not apply to a person twenty-one years of age or older transporting a concealable firearm in the passenger compartment of a motor vehicle so long as such concealable firearm is otherwise lawfully possessed..." 571.030.3 RSMo. (2003) effective October 11, 2003. The exception to the concealable firearm law effective later in 2003 would not have helped Mr. Crossno since he is allegedly a convicted felon and would not have been a person otherwise lawfully possessing the firearm. See Indictment.

The defendant was properly arrested.

### Seizure of the Firearm

The government analyzes the propriety of the seizure of the pistol on an abandonment theory. Abel v. United States, 362 U.S. 217, 241, 80 S.Ct. 683, 698 (1960); United States v. Segars, 31 F.3d 655, 658 (8th Cir. 1994); United States v. Hollman, 541 F.2d 196 (8th Cir. 1976); United States v. Koessel, 706 F.2d 271 (8th Cir. 1983). The court also considers the pistol as evidence of a crime in plain view of Deputy Pratt from where the deputy had a right to be. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Gillon, 348 F.3d 755, 759 (8th Cir. 2003). The government also pursued this theory in its memorandum. As evidence of a crime, it was properly seized.

### Search of Defendant's Vehicle

The defendant was validly arrested. When police make a valid arrest of the occupant of a vehicle, they may search the passenger compartment, New York v. Belton, 453 U.S. 454, 461 (1981) at 462, and any containers within it even after they have exclusive control of the vehicle. Belton, 453 U.S. at 460. The seizure of the .22 caliber ammunition within the vehicle was legal pursuant to the valid arrest of the defendant. The sword would likewise have been subject to seizure for the same reason since it qualifies as a "knife" readily capable of lethal use under 571.030.1.(1). Deputy Pratt was not sure whether the sword was seized or not.

### Statements by the Defendant

As far as the testimony went, the only statement made by the defendant in response to a question occurred when Deputy Pratt asked Mr. Crossno how much alcohol he had consumed. Mr. Crossno stated he did not know. All he did know is that he was drunk. The government has stipulated that this question by Officer Pratt was improper and the response by Mr. Crossno that he was drunk should be suppressed. The government states in its memorandum that it will not inquire into this matter in its case in chief at trial. (Doc. #24 at 11). According to the testimony, the other statements made by the defendant were not in response to any questions asked of him and were spontaneous statements by the defendant which did not require Miranda warnings and are admissible. United States v. Hawkins, 102 F.3d 973, 975 (8th Cir. 1996); United States v. McCoy, 200 F.3d 582, 584 (8th Cir. 2000).

The court finds statements made by the defendant which were not in response to interrogation did not require the Miranda warnings and, therefore, as spontaneous voluntary statements are admissible in evidence.

In view of the foregoing,

**IT IS, THEREFORE, RECOMMENDED** that the defendant's Motion to Suppress Evidence and Statements (Document #17) be denied with the exception of Officer Pratt's question to Mr. Crossno asking how much alcohol he had consumed and Mr. Crossno's response.

**IT IS FURTHER RECOMMENDED** that by agreement of the parties, the question asked of the defendant, Joseph D. Crossno, by Officer Pratt how much he had to drink and the defendant's response be suppressed.

**IT IS HEREBY ORDERED** that pursuant to the government's agreement, the government shall not inquire into the suppressed question and answer in its case in chief at trial.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(l), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

*/s/ Lewis M. Blanton*
_____
LEWIS M. BLANTON
UNITED STATES MAGISTRATE JUDGE

Dated this 14th day of June, 2006.